# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>DAMARI WILLIAM SINGLETON,<br><br>    Defendant. | Case No.  16-cr-00518-BLF<br>Case No.  21-cv-01921-BLF<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S § 2255 MOTION; VACATING SENTENCE; AND DIRECTING COUNSEL TO MEET AND CONFER RE A NEW SENTENCING DATE**<br><br>[Re:  ECF 153] |

## I.    INTRODUCTION

After pleading guilty to one count of sex trafficking of children, Defendant Damari William Singleton ("Singleton") was sentenced to a 210-month term of imprisonment and a 7-year term of supervised release.  He filed an appeal but voluntarily dismissed it.  Singleton, represented by counsel, now brings a Motion to Vacate and Correct Conviction and Sentence Pursuant to 28 U.S.C. § 2255, asserting two claims of ineffective assistance of counsel ("IAC") at sentencing.  He asks the Court to vacate his sentence and set a new sentencing hearing at which he can present evidence and arguments that allegedly should have been presented the first time around.

In his first IAC claim, Singleton asserts that his trial counsel, Michael Hinckley, was ineffective for failing to object to the criminal history category of V in the Presentence Report ("PSR") prepared by the United States Probation Office ("Probation").  According to Singleton, two of the prior sentences included in Probation's criminal history calculation should have been treated as a single sentence under U.S.S.G. § 4A1.2(a)(2), and three of the prior sentences should not have factored into the criminal history calculation at all.  Had Mr. Hinckley raised those objections, Singleton claims, his criminal history category would have been at most IV, and possibly as low as III or even II.

In his second IAC claim, Singleton asserts that Mr. Hinckley was ineffective for conceding that Singleton engaged in post-plea criminal conduct.  The PSR stated, and the Government argued, that Singleton sought to form a new prostitution ring while in custody awaiting sentence after entering his guilty plea.  The Court relied on that post-plea conduct in denying Singleton's request for a downward variance.  Singleton contends that he did not form a new prostitution ring, but merely sought to start a legal business focused on pornography and adult entertainment.  Had Mr. Hinckley challenged the Government's characterization of his conduct, Singleton argues, the Court would not have had a legitimate basis to deny his request for a downward variance.

In opposition, the Government argues that both of Singleton's IAC claims are without merit and that Singleton is entitled to no relief.  The Government tacitly concedes that two of the prior sentences listed in Probation's criminal history calculation should have been treated as a single sentence under U.S.S.G. § 4A1.2(a)(2), and that as a result the correct criminal history category is at most IV.  However, the Government argues that no prejudice flowed from Mr. Hinckley's failure to bring that error to the Court's attention, because a criminal history category of IV would have resulted in a Guidelines range of 188-235 months and Singleton's sentence of 210 months is within that range.  The Government disputes Singleton's assertions that three of his prior sentences should not have factored into the criminal history calculation, and that his counsel should have challenged the Government's characterization of his post-plea conduct as criminal.

Singleton's § 2255 motion is GRANTED as to his first IAC claim based on trial counsel's failure to object to the criminal history category of V, and is DENIED as to his second IAC claim based on trial counsel's concession that he engaged in post-plea criminal conduct.  The sentence is VACATED, and counsel are directed to MEET AND CONFER regarding a new sentencing date.

## II.    BACKGROUND

*Indictment*

On December 15, 2016, a grand jury indicted Singleton on charges of conspiracy to commit sex trafficking of children (Count 1), sex trafficking of children (Counts 2 and 3), transportation of a minor for prostitution (Count 4), and coercion and enticement for prostitution (Count 5).  *See* Indictment, ECF 6.

*Offense Conduct*

The PSR contains a detailed recitation of Singleton's offense conduct, drawn from investigative reports prepared by the Federal Bureau of Investigations ("FBI") and the San Jose Police Department.  *See* PSR ¶¶ 6-31, ECF 94.  In brief, Singleton and others operated a prostitution business throughout the state of California, selling the commercial sexual services of underage girls and adult women.  *See id.*  Singleton and a woman named Teyanna Michels, who acted as Singleton's "bottom bitch" (slang for a pimp's number one girl), recruited underage girls and young women to serve as prostitutes, posted advertisements for their sexual services, transported them to and from prostitution dates, provided condoms and lubricant, and set rates for specific services.  *See id.*  Among those recruited was 15-year old R.O., who was put to work in hotels and sometimes had more than 10 dates a day.  *See id.* ¶¶ 25-26.  Another recruit was 17-year old L.G.  *See id.* ¶¶ 21-22.  Singleton routinely had sex with his girls without a condom, whether the girls wanted to or not, and he gave both R.O. and L.G. chlamydia.  *See id.*

*Guilty Plea*

In January 2019, Singleton entered into a plea agreement with the Government pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B), under which Singleton agreed to plead guilty to a single count of sex trafficking of children (Count 2) and the Government agreed to dismiss the remaining counts.  *See* Plea Agreement, ECF 87.  The parties agreed that Singleton's adjusted offense level was 31 or 33, depending on whether the Court applied a two-point enhancement under U.S.S.G. § 3B1.1(c) for being an organizer, leader, or manager of criminal activity.  *See* Plea Agreement ¶ 7.  The parties did not agree on Singleton's criminal history category, which was left for later determination.  *See id.*

The Court accepted Singleton's guilty plea to Count 2 on January 22, 2019.  *See* Criminal Minutes, ECF 88.

*Post-Plea Conduct*

The PSR contains a description of Singleton's conduct while in custody awaiting sentencing, relying on facts drawn from reports, documents, and recordings of jail calls provided by the Government.  *See* PSR ¶ 33.  Probation construed Singleton's conduct as an attempt to form

United States District Court
Northern District of California

a new prostitution ring from jail. *See id.* In several calls between Singleton and his brother, Damien Walton a/k/a "Scoot," the men discussed recruiting young women who had just been released from jail. *See id.* ¶ 33. Singleton sent public records requests to sheriff's offices and detention facilities in California and Nevada, seeking information on female inmates between the ages of 18 and 25, including their photographs, bail amounts, and release dates. *See id.* ¶¶ 34-35, 37. He wanted foster kids, women who had been on drugs, women with no families, and women with low bails. *See id.* ¶ 33. Singleton contacted these women while they were still in custody, pretending to be Scoot, and claiming that the brothers had a company involved in adult entertainment, pornography, and other legal businesses. *See id.* Singleton urged Scoot to get organized with a calendar of the women's release dates, and to pick them up from custody before they could go back to a boyfriend. *See id.* Singleton cautioned Scoot not to mention "the game" to women while they were still in custody. *See id.*

In July 2019, Singleton spoke to a woman called "Princess," telling her that he had a "whole fucking team" including "snows, Asians," and that he needed Princess to manage them. *See* PSR ¶ 36. Singleton told Princess that she did not have to "get down" because she had already been in the game, and now it was time for her to start selling the game. *See id.* Singleton also told her that he didn't "fuck with hotels," that he used condos, and that he was "finna get an empire." *See id.*

### Sentencing and Judgment

Singleton was sentenced on September 10, 2019. *See* Criminal Minutes, ECF 102; Hrg. Tr., ECF 124. The plea agreement reflected that Singleton's adjusted offense level was 31 or 33, depending on whether the Court applied a two-point enhancement for being an organizer, leader, or manager of criminal activity. Probation recommended that the two-point enhancement be applied. *See* PSR ¶ 48. The Court found the enhancement to be appropriate based on Singleton's role in the charged offense, rejecting the defense's argument to the contrary. *See* Hrg. Tr. 6:5-22. Accordingly, the Court determined that the adjusted offense level was 33. *See id.*

The Court then addressed the criminal history category. Probation determined that Singleton had 8 criminal history points based on four prior sentences, plus 2 criminal history

1   points because he committed the current offense while under a criminal justice sentence for false

2   identification to a peace officer, for a total of 10 criminal history points.  *See* PSR ¶¶ 58-64.  A

3   criminal history score of 10 establishes a criminal history category of V.  *See id.* ¶ 64.  Singleton's

4   trial counsel, Mr. Hinckley, agreed with Probation's calculation, stating "[t]he math is right."  Hrg.

5   Tr. 6:23-7:11.  Based on the PSR, and absent objection by Mr. Hinckley, the Court found

6   Singleton's criminal history category to be V.

7          Using an adjusted offense level of 33 and a criminal history category of V, the Court

8   calculated the Guidelines range as 210-262 months.  *See* Hrg. Tr. 7:15-16.  There were no

9   objections to that Guidelines calculation.  *See id.* 7:22-24.  The defense requested a downward

10   variance to the mandatory minimum sentence of 120 months imprisonment.  *See id.* 17:16-26:6.

11   Probation recommended a downward variance to 144 months imprisonment.  *See* PSR.  The

12   Government requested a low Guidelines sentence of 210 months.  *See* Hrg. Tr. 9:13-17:4.

13          The Court began its consideration of an appropriate sentence at the high end of the

14   Guidelines range, 262 months, due to the "horrific" nature of the offense and Singleton's apparent

15   attempt to engage in further criminal activity from jail while awaiting sentencing.  *See* Hrg. Tr.

16   32:15-21.  The Court reduced the sentence to the low end of the Guidelines range, 210 months,

17   based on Singleton's childhood poverty and abuse, as well as his diagnosis of a mental health

18   condition, post-traumatic stress disorder ("PTSD").  *See id.* 32:6-10.

19          The Court declined to grant a downward variance, finding that Singleton was a risk to the

20   public in light of his history of violence toward women and his post-plea efforts to continue

21   exploiting women.  *See id.* 31:1-7.  Mr. Hinckley did not dispute that Singleton attempted to set up

22   a new prostitution ring from jail, but he attributed Singleton's conduct to his PTSD and lack of

23   mental health treatment.  *See id.* 20:24-23:14.  Mr. Hinckley argued that some people who have

24   mental illnesses are not in control, and he asked the Court to look at Singleton's case from that

25   perspective.  *See id.* 23:11-14.  The Court found that Singleton's mitigating factors were

26   adequately addressed by a low Guidelines range sentence, and concluded that his case was not

27   factually similar to others in which substantial variances were granted.  *See id.* 32:10-14.

28          At the end of the hearing, the Court orally sentenced Singleton to a 210-month term of

United States District Court
Northern District of California

5

imprisonment, a 7-year term of supervised release, a special assessment in the amount of $100, and restitution in an amount to be determined.  *See* Hrg. Tr. 34:11-39:24.  Judgment was entered on September 19, 2019.  *See* Jud., ECF 104.  The Court held a restitution hearing on November 8, 2019, at which the parties stipulated to restitution in the amounts of $50,100.00 to R.O. and $2,400.00 to L.G.  *See* Criminal Minutes, ECF 114.

> *Appeal*

Singleton filed a notice of appeal on September 23, 2019.  *See* Notice, ECF 105.  The United States Court of Appeals for the Ninth Circuit granted Singleton's motion for voluntary dismissal of the appeal on March 31, 2020.  *See* Order of USCA, ECF 148.

> *Present § 2255 Motion*

Singleton timely filed the present § 2255 motion on March 18, 2021, asserting two IAC claims alleging that his trial counsel, Mr. Hinckley, rendered ineffective assistance at sentencing.[1]  *See* § 2255 Mot., ECF 153.  Briefing was delayed so the Government could pursue discovery regarding Singleton's IAC claims.  The Government filed opposition to the § 2255 motion on October 18, 2021.  *See* Opp., ECF 165.  The opposition is supported by a declaration obtained from Mr. Hinckley, among other evidence.  *See* Hinckley Decl., ECF 165-2.  The Court granted six stipulated requests for continuance of Singleton's deadline for reply.  *See* ECF 168, 170, 172, 174, 176, 178.  Singleton filed a reply on December 5, 2022 and an amended reply on December 23, 2022.  *See* Reply, ECF 179; Am'd Reply, ECF 180.  He also filed a short supplemental brief on January 26, 2023.  *See* Suppl., ECF 181.  The Court has considered all of the briefing.

### III.   LEGAL STANDARD

A prisoner in federal custody may move to vacate, set aside, or correct his sentence based on a claim that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was

---

[1] Singleton's brief addresses the timeliness of his filing and also points out that the § 2255 motion is not precluded by his plea agreement.  *See* § 2255 Mot. at 4-6, ECF 153.  The Government does not contend that the motion is untimely or barred by the plea agreement.  *See generally* Opp., ECF 165.

United States District Court
Northern District of California

in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  28

U.S.C. § 2255(a).  "Unless the motion and the files and records of the case conclusively show that

the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the

United States attorney, grant a prompt hearing thereon, determine the issues and make findings of

fact and conclusions of law with respect thereto."  28 U.S.C. § 2255(b).  "If the court finds . . . that

the sentence imposed was not authorized by law or otherwise open to collateral attack . . . the

court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or

grant a new trial or correct the sentence as may appear appropriate."  *Id.*

An oral hearing is not necessary in all cases."  *United States v. Rodriguez-Vega*, 797 F.3d
781, 791 (9th Cir. 2015).  "Frequently, as here, an expansion of the record accompanied by
supplemental briefs will suffice for that purpose."  *Id.* (district court did not abuse its discretion in
failing to conduct an evidentiary hearing where expanded record provided adequate basis to
resolve IAC claim).

A claim that trial counsel was ineffective at sentencing is cognizable under § 2255.  *See*
*Glover v. United States*, 531 U.S. 198, 204 (2001).  Thus, although a federal prisoner may not
directly attack a sentencing error under § 2255, he may claim that counsel's failure to raise the
issue constituted ineffective assistance.  *See United States v. Reed*, 230 F.3d 1368 (9th Cir. 2000)
("Although Reed cannot directly attack his sentencing enhancement under U.S.S.G. § 2D1.1 ... he
can allege that his counsel's failure to raise the issue fell below an 'objective standard of
reasonableness.'").

## IV.   DISCUSSION

As noted above, Singleton asserts two IAC claims relating to the assistance rendered by his
trial counsel, Mr. Hinckley, at sentencing.  In the first claim, Singleton asserts that Mr. Hinckley
was ineffective for failing to object to the criminal history category of V in the PSR.  In the second
claim, Singleton asserts that Mr. Hinckley was ineffective for conceding that he engaged in post-
plea criminal conduct, specifically, attempting to start a new prostitution ring while in custody
awaiting sentence.  The Government argues that Singleton is not entitled to relief under either
claim.

United States District Court
Northern District of California

The Supreme Court established a two-prong test for ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 668 (1984). First, the movant must establish that counsel's performance was deficient, meaning that "counsel's representation fell below an objective standard of reasonableness" as measured by "prevailing professional norms." *Strickland*, 466 U.S. at 688. Second, the movant must establish resulting prejudice. *See id*. at 694. Specifically, the movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*.

### A.    First IAC Claim – Failure to Object to Criminal History Category V

In his first IAC claim, Singleton asserts that Mr. Hinckley was ineffective for failing to object to the criminal history category of V in the PSR. This claim has two components. First, Singleton contends that two of the prior sentences included in Probation's criminal history calculation should have been treated as a single sentence under U.S.S.G. § 4A1.2(a)(2). Second, he contends that three of the prior sentences were related to the conspiracy underlying the current conviction and therefore should not have factored into the criminal history calculation.

Probation determined that Singleton had 8 criminal history points based on the four prior sentences listed below, plus 2 criminal history points because he committed the current offense while under a criminal justice sentence for false identification to a peace officer, for a total of 10 criminal history points. *See* PSR ¶¶ 58-64. A criminal history score of 10 establishes a criminal history category of V. *See id*. ¶ 64.

| Date of Convict. | Charge | Type | Sentence | Points |
|---|---|---|---|---|
| 7/30/2015 | PC 148.9(a)<br>False ID to Police | Misdemeanor | 3 years prob., 9 days jail | 1 |
| 4/21/2016 | VC 14601.1<br>Driv. on Susp. License | Misdemeanor | 2 years prob., fine | 1 |
| 11/16/2016 | PC 273.5<br>Corp. Injury on Spouse<br>PC 136.1<br>Witness Intimidation<br>PC 236/237<br>False Imprisonment | Felony | 32 months prison<br>(concurrent with below) | 3 |
| 11/16/2016 | PC 459/460<br>First Deg. Burglary | Felony | 2 years prison<br>(concurrent with above) | 3 |

United States District Court
Northern District of California

### 1.    Single Sentence under U.S.S.G. § 4A1.2(a)(2)

The Guidelines provide instructions for computing criminal history in U.S.S.G. § 4A1.2.[2]
The subsection relevant here, § 4A1.2(a)(2), reads in relevant part as follows:

> (2) If the defendant has multiple prior sentences, determine whether those sentences are counted separately or treated as a single sentence. Prior sentences always are counted separately if the sentences were imposed for offenses that were separated by an intervening arrest (i.e., the defendant is arrested for the first offense prior to committing the second offense). *If there is no intervening arrest, prior sentences are counted separately unless* (A) the sentences resulted from offenses contained in the same charging instrument; or *(B) the sentences were imposed on the same day. Treat any prior sentence covered by (A) or (B) as a single sentence.*

U.S.S.G. § 4A1.2(a)(2) (emphasis added).

Singleton argues that the two sentences imposed on November 16, 2016 – the first for inflicting corporal injury on a spouse and related charges ("domestic violence offense") and the second for burglary ("burglary offense") – should have been treated as a single sentence, because there was no intervening arrest between the two offenses, and sentence on the two offenses was imposed on the same day, to run concurrently.

The PSR was ambiguous as to when Singleton committed the domestic violence offense. *See* PSR ¶ 58.  It stated that the victim reported the offense on April 29, 2014 when law enforcement officers spoke to her at a hospital emergency room.  *See id.*  However, it also stated that the offense occurred on June 24, 2014 and that Singleton was arrested on that date.  *See id.*  Finally, it stated that Singleton was not in custody when law enforcement spoke to the victim and that an arrest warrant was issued later.  *See id.*  The parties agree that in fact Singleton was not arrested on the domestic violence offense before he committed the burglary offense.  The Santa Clara County Superior Court imposed sentence in both cases on November 16, 2016, with the sentences to run concurrently.  *See id.* ¶¶ 58, 60.  Accordingly, the sentences on the domestic violence and burglary offenses should have been treated as one sentence for purposes of calculating Singleton's criminal history.  The failure to do so was error.

---

[2] "The sentencing court generally is to use the Guidelines Manual in effect on the date of sentencing."  *United States v. Marler*, 527 F.3d 874, 877 n.1 (9th Cir. 2008).  Because U.S.S.G. § 4A1.2 was last amended in 2018, the current version of the guideline is the same version that was in effect when Singleton was sentenced on September 10, 2019.

United States District Court
Northern District of California

United States District Court
Northern District of California

1     The Court finds unpersuasive the Government's suggestion that Singleton's arrest on an

2 *unrelated* offense between committing the domestic violence offense and the burglary offense

3 could qualify as an intervening arrest for purposes of U.S.S.G. § 4A1.2(a)(2).  *See* Opp. at 12.

4 Such an approach would be contrary to the plain language of the guideline, which defines

5 "intervening arrest" in the following parenthetical:  "(i.e., the defendant is arrested for the first

6 offense prior to committing the second offense)."  The abbreviation "i.e.," from the Latin "id est,"

7 means "that is."  Merriam-Webster Online Dictionary, https://www.merriam-

8 webster.com/dictionary/i.e. (last visited January 31, 2023).  Thus, the parenthetical explanation

9 does not merely provide an example of circumstances that would qualify as an "intervening

10 arrest," it explains what an intervening arrest *is* in the context of the guideline.

11     The Government tacitly recognizes that there is no qualifying intervening arrest in this

12 case, citing to an unpublished 1994 Ninth Circuit decision holding that the intervening arrest must

13 be for the first of the related offenses.  Citation to that decision is impermissible under Ninth

14 Circuit Rule 36-3.  *See* Ninth Circuit Rule 36-3 ("Unpublished dispositions and orders of this

15 Court issued before January 1, 2007 may not be cited to the courts of this circuit, except in

16 [circumstances not applicable here].").  However, given the plain language of U.S.S.G. §

17 4A1.2(a)(2), and the lack of any cases within the Ninth Circuit applying the interpretation offered

18 by the Government, the Court concludes that Singleton's arrest on an unrelated offense does not

19 qualify as an intervening arrest here.

20     Application of U.S.S.G. § 4A1.2(a)(2) reduces Singleton's criminal history by 3 points,

21 from 10 to 7.[3]  A criminal history score of 7 establishes a criminal history category of IV, which

22 when combined with adjusted offense level of 33 results in a Guidelines range of 188-235 months.

23 *See* U.S.S.G. Ch. 5, Pt. A.

24

25 ───────────────

26 [3] Singleton's motion states that application of U.S.S.G. § 4A1.2(a)(2) reduces Singleton's criminal history by only 2 points.  *See* § 2255 Mot. at 24.  However, his Amended Reply correctly states that the reduction is 3 points.  *See* Am'd Reply at 4 & n.4, ECF 180.  This discrepancy does not affect the analysis, as the criminal history category would be IV whether Singleton had 7 or 8 criminal history points.  *See* U.S.S.G. Ch. 5, Pt. A.

27

28

United States District Court
Northern District of California

Singleton contends that Mr. Hinckley provided ineffective assistance when he failed to determine whether Singleton in fact was arrested on the domestic violence offense before committing the burglary offense.  In a declaration submitted by the Government, Mr. Hinckley concedes that the prior sentences on the domestic violence and burglary offenses should have been treated as a single sentence under U.S.S.G. § 4A1.2(a)(2).  *See* Hinckley Decl. ¶ 4, ECF 165-2. Mr. Hinckley states that he did not investigate the application of U.S.S.G. § 4A1.2(a)(2) because he relied on erroneous statements in the PSR and a criminal history printout indicating that Singleton was arrested on the domestic violence offense on June 24, 2014.  *See id.*  Given that U.S.S.G. § 4A1.2(a)(2) clearly would have applied but for an intervening arrest, and the ambiguities in the PSR as to whether such an arrest occurred, Singleton argues that it was objectively unreasonable for Mr. Hinckley not to fully investigate the potential application of U.S.S.G. § 4A1.2(a)(2).  The Court agrees.  The 6 criminal history points attributed to the sentences on the domestic violence and burglary offenses comprised the majority of criminal history points in this case.  Thus, the potential impact of U.S.S.G. § 4A1.2(a)(2) was apparent. The Court finds that Mr. Hinckley's failure to verify whether an intervening arrest occurred constituted deficient performance.

To establish prejudice resulting from this deficiency, Singleton "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, *Id.* 466 U.S. at 694.  As discussed above, the Court began its determination of an appropriate sentence at the high end of the Guidelines range, which the Court had calculated to be 210-262 months based on an adjusted offense level of 33 and a criminal history category of V.  *See* Hrg. Tr. 7:15-16, 32:15-21.  From its starting place of 262 months, the Court came down to the low end of the Guidelines range in consideration of Singleton's childhood poverty and abuse and mental health condition.  *See id.* 32:6-10.  The Court ultimately imposed a low Guidelines range sentence of 210 months imprisonment.  *See id.* 34:11-39:24.  The Court finds that there is a reasonable probability it would have imposed a different sentence had it considered a Guidelines range of 188-235 months rather than a range of 210-262 months.

The Court finds unpersuasive the Government's argument that Singleton was not prejudiced because the 210-month term of imprisonment happens to fall within the lower Guidelines range. The Government has not cited any authority to support its argument. The Supreme Court has emphasized that "[D]istrict courts *must* begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process." *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1904 (2018) (internal quotation marks and citation omitted). "Courts are not bound by the Guidelines, but even in an advisory capacity the Guidelines serve as a meaningful benchmark in the initial determination of a sentence and through the process of appellate review." *Id*. (internal quotation marks and citation omitted). The Supreme Court has cautioned, however, that "to consult the applicable Guidelines range, a district court must first determine what that range is" by applying "the offense level and the criminal history category." *Id*. While those statements were made in the context of the Supreme Court's discussion of plain error review of a miscalculation of the applicable Guidelines range, they underline the importance of a correct Guidelines calculation in determining an appropriate sentence.

The Court observes that Singleton has submitted a supplemental brief indicating that the Bureau of Prisons ("BOP") determines an inmate's security classification based in part on the inmate's criminal history points. *See* Suppl., ECF 181. Singleton argues that trial counsel's failure to challenge Probation's criminal history calculation resulted in his placement in the "High"/"Maximum" security classification rather than the "Medium" security classification. *See id.* Singleton appears to argue that this establishes additional prejudice flowing from Mr. Hinckley's deficient representation.

The Court need not rely on the supplemental brief in order to grant Singleton's motion, nor would such reliance be appropriate given that the supplemental brief was not timely filed and the Government has not had a chance to respond to it. However, the supplemental brief raises a concern that the error in Singleton's criminal history calculation identified above may be having a present negative effect on his security classification. For that reason, the Court has expedited its consideration of Singleton's § 2255 motion even though it has a number of other matters on its docket that otherwise would be given priority.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

Accordingly, Singleton's § 2255 motion is GRANTED IN PART on his first claim for IAC insofar as that claim is based on Mr. Hinckley's failure to challenge the criminal history category of V based on application of U.S.S.G. § 4A1.2(a)(2).  The Court will vacate the sentence imposed in reliance on that incorrect criminal history category, direct Probation to prepare a revised PSR with respect to the appropriate criminal history category and resulting Guidelines range, and set a new sentencing hearing as soon as is practicable.

## 2.    Related Conduct

"[W]hen a defendant has received a prior sentence, the district court must determine whether to take the prior sentence into account in either the base offense level calculation or the criminal history calculation."  *United States v. Rivera-Gomez*, 634 F.3d 507, 511 (9th Cir. 2011).  "To do so, the district court must determine whether the conduct underlying that prior sentence is relevant to the crime of conviction, as defined in § 1B1.3(a)(1)(A)."  *Id*.  "If the conduct underlying the prior sentence constitutes relevant conduct to the crime of conviction, then it must be included in the offense level calculation (i.e., it is accounted for as part of the specific offense characteristics), and cannot be included in the criminal history calculation."  *Id*.  "On the other hand, if the conduct underlying the prior sentence is not relevant to the crime of conviction, then the prior sentence must be included as part of the defendant's criminal history score."  *Id*. at 512.

Singleton contends that Mr. Hinckley should have argued that the conduct underlying three of the four prior sentences constituted relevant conduct to the current conviction, and therefore should not have been included in the criminal history calculation.  The three prior sentences are those imposed for Singleton's July 30, 2015 conviction for providing false identification to police ("false ID offense"); November 16, 2016 conviction for the burglary offense discussed in Section VI.A.1, above; and April 21, 2016 conviction for driving on a suspended license ("suspended license offense").  Singleton asserts that successful arguments with respect to some or all of those sentences would have eliminated sufficient criminal history points to reduce his criminal history category to III or even II.  If combined with an adjusted offense level of 33, a criminal history category of III would result in a Guidelines range of 168 to 210 months, and a criminal history category of II would result in a Guidelines range of 151 to 188 months.  *See* U.S.S.G. Ch. 5, Pt. A.

United States District Court
Northern District of California

1   Singleton contends that Mr. Hinckley's failure to pursue those potential reductions in the criminal

2   history category provides an additional basis to grant relief on his first IAC claim.

3                        a.        **False ID Offense**

4        Probation attributed 1 criminal history point to Singleton's sentence on a July 30, 2015

5   conviction for providing false identification to police.  *See* PSR ¶ 59.  The conviction arose from a

6   vehicle stop on January 24, 2015.  *See id.*  The PSR indicates that according to the Sacramento

7   Police Department arrest report, officers observed a vehicle driving without front license plates

8   and conducted a traffic stop.  *See id.*  Singleton, who was driving the vehicle, told officers his

9   name was Keith Adams.  *See id.*  Officers conducted a records check and were unable to find a

10  driver's license for a Keith Adams.  *See id.*  Singleton then admitted that he had provided a false

11  name and provided officers with his true name.  *See id.*  The officers arrested Singleton based on

12  several active arrest warrants.  *See id.*

13       Singleton asserts that this vehicle stop occurred shortly after a January 16, 2015 raid of his

14  apartment by San Jose police.  *See* Singleton Decl. ¶ 2, ECF 153-2.  Singleton characterizes the

15  raided apartment as the central location of the prostitution activities involving R.O.  *See id.*

16  According to Singleton, his co-conspirator Teyanna Michels and others were arrested during the

17  raid, and when he bailed Michels out of jail a few days later, Michels told him that she and another

18  person had implicated Singleton in the offense.  *See id.*  Singleton asserts that when the

19  Sacramento police stopped his vehicle on January 24, 2015, he knew that he was wanted for his

20  role in the sex trafficking conspiracy and that was why he gave a false name.  *See id.*  Singleton

21  said he told officers he gave a false name because of other traffic violations, but actually it was

22  because he thought there was an arrest warrant for him on child sex trafficking charges.  *See id.*

23  Under these circumstances, Singleton contends, Mr. Hinckley should have objected to inclusion of

24  the sentence on the false ID offense in his criminal history calculation on the basis that it more

25  properly should have been included in the offense level calculation.

26       In his declaration, Mr. Hinckley states that he did not argue that the False ID offense was

27  relevant conduct to the current sex trafficking charge because he did not believe he had a basis to

28  make such an argument.  *See* Hinckley Decl. ¶ 8.  Mr. Hinckley states that the incident report for

the offense reflected that at the time of January 24, 2015 vehicle stop, Singleton knew he did not have a valid driver's license and knew he had outstanding traffic warrants. *See id.* In Mr. Hinckley's experience, both of those are common reasons why people give false names to the police. *See id.* There was no warrant for Singleton based on sex trafficking at that time. *See id.*

"An ineffective assistance of counsel claim will fail if the conduct can be readily explained as reasonable trial strategy." *Mendez v. Swarthout*, No. 16-15026, 2018 WL 2077278, at *2 (9th Cir. May 4, 2018). Mr. Hinckley's determination that he had no basis to argue that the conduct underlying the sentence on the false ID offense was relevant to the current crime of conviction appears to be a reasonable strategy under the circumstances. "'[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Mejia-Mesa*, 153 F.3d 925, 931 (9th Cir. 1998) (quoting *Strickland*, 466 U.S. at 689). Singleton has offered no factual or legal grounds sufficient to rebut that presumption. Accordingly, the Court finds that Singleton has failed to show that Mr. Hinckley's performance was deficient for failing to argue that the sentence on the false ID offense should not be included in the criminal history calculation. Having concluded that Singleton has not established deficient performance, the Court need not and does not address *Strickland's* second prong, prejudice. *See Strickland*, 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim to . . . address both components of the inquiry if the defendant makes an insufficient showing on one.").

### b.    Burglary Offense

Probation attributed 3 criminal history points to Singleton's sentence on a November 16, 2016 conviction on the burglary offense. The PSR indicates that according to the Sunnyvale Police Department arrest report, officers responded on January 7, 2015 to a report of a residential burglary. *See id.* Electronics, jewelry, and a camera valuing more than $15,000 had been taken. *See id.* The victim was out of the country, and was notified that his credit cards had been used at Best Buy, the San Jose Marriott, and a limousine service. *See id.* During the investigation, the officers viewed surveillance video from the Best Buy transaction and identified Singleton as the individual who used the victim's credit cards. *See id.* The limousine service dropped off the

1   individuals who used the victim's credit card at an address associated with Singleton.  *See id.*

2       Singleton states in his declaration that he committed the burglary for the purpose of

3   obtaining computers and other items for use in maintaining his prostitution business.  *See*

4   Singleton Decl. ¶ 4.  He claims that computers taken from the residence were used for internet

5   access to promote the prostitution business, the camera taken from the residence was used to

6   photograph women who worked for him to promote the prostitution business, and the credit cards

7   were used to buy items needed for the business, hire limousine services, and rent hotel rooms.  *See*

8   *id.*  In opposition, the Government argues that there is no evidence that the items stolen during the

9   burglary were used in furtherance of the sex trafficking business.  The Government submits the

10  police report from the raid on Singleton's apartment, pointing out that none of the witnesses

11  interviewed by law enforcement mentioned Singleton's use of the stolen items to facilitate sex

12  trafficking activities.  *See* Harris Decl. Ex. B, ECF 165-1.  The apartment was leased by Michels,

13  not Singleton; Michels paid for R.O.'s travel using her own credit card; photos of R.O. were found

14  on the phone seized from Michels.  *See id.*  Mr. Hinckley provides little information regarding his

15  reasons for not arguing that the burglary was related conduct, stating only that he believed that

16  "the burglary was an unrelated crime of opportunity" and that he did not recall Singleton telling

17  him anything different.  *See* Hinckley Decl. ¶ 9.

18      Given the conflicts in the evidence, and the sparseness of the explanation provided by Mr.

19  Hinckley, the Court cannot determine on this record whether Mr. Hinckley's performance was

20  deficient for failing to argue that the burglary sentence should be included in the offense level

21  calculation rather than the criminal history calculation.  However, even assuming without deciding

22  for purposes of this motion that the burglary was related conduct and that Mr. Hinckley's

23  performance was deficient on this point, Singleton has failed to establish resulting prejudice.  *See*

24  *Strickland*, 466 U.S. at 697 ("[A] court need not determine whether counsel's performance was

25  deficient before examining the prejudice suffered by the defendant as a result of the alleged

26  deficiencies.").

27      For the reasons discussed above in Section VI.A.1, the sentence on the burglary offense

28  and the sentence on the domestic violence offense must be treated as a single sentence for

purposes of calculating Singleton's criminal history score.  Consequently, although if treated separately each sentence would add 3 points to Singleton's criminal history score, treated as a single sentence they add a total of 3 points.  If the sentence on the burglary offense were eliminated from the criminal history calculation, the sentence on the domestic violence offense would remain and would itself add the same 3 points to Singleton's criminal history score. Because Singleton's criminal history score, and corresponding criminal history category, would not have been any different had Mr. Hinckley presented and succeeded on the related conduct argument, there is no "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

### c.    Suspended License Offense

Probation attributed 1 criminal history point to Singleton's sentence on a April 21, 2016 conviction for driving on a suspended license.  *See* PSR ¶ 61.  The conviction arose from a vehicle stop on September 2, 2015.  *See id.*  The PSR indicates that according to the Milpitas Police Department report, officers observed Singleton's vehicle pull out of a gas station without a front license plate.  *See id.*  The officers followed the vehicle and observed that he did not have a rear license plate either.  *See id.*  The officers conducted a traffic stop and Singleton was found to be driving on a suspended license.  *See id.*  Singleton's passenger did not have a valid driver's license, so Singleton was cited and the vehicle was towed.  *See id.*

Singleton claims that immediately prior to the September 2, 2015 vehicle stop, he and his wife were driving R.O. to the Crown Plaza Hotel for a pre-arranged prostitution date.  *See* Singleton Decl. ¶ 5.  As Singleton drove into the front entrance of the hotel, he noticed a police car patrolling the area, directed R.O. to get out of the car quickly, and drove toward a nearby Chevron gas station.  *See id.*  He was pulled over as he left the gas station.  *See id.*  Singleton claims that the officers asked him if he was a pimp, asked his wife if she was a prostitute, performed an internet search of his wife's telephone number, and discovered online advertisements for his wife's sexual services.  *See id.*  According to Singleton, R.O. called him during the traffic stop, saying that she was watching the stop from her hotel window.  *See id.*

In his declaration, Mr. Hinckley states that Singleton initially told him that he and his wife

had dropped R.O. off at a hotel immediately before the September 2, 2015 vehicle stop. *See* Hinckley Decl. ¶ 10. Singleton also told Mr. Hinckley that the officers questioned Singleton and his wife about prostitution. *See id.* However, Singleton subsequently mailed a written statement to Probation without informing, or consulting with, Mr. Hinckley. *See id.* Singleton advised Probation in that letter that "[t]he only issues that I have with the P.S.I. report is that I was not on probation during the instant offense," and that he had "stopped all sex trafficking related activities no later than July 29, 2015." *See id* & Ex. B. In Mr. Hinckley's view, making a related conduct argument that contradicted Singleton's written letter to Probation "would have placed Mr. Singleton at risk of being found in violation of the plea agreement, and it could have triggered challenges to his acceptance of responsibility, claims of obstruction, and it could have adversely affected his chances of obtaining a downward variance." *See* Hinckley Decl. ¶ 11.

As stated above, an IAC claim cannot succeed if the attorney's conduct readily can be explained as reasonable strategy. *See Mendez*, 2018 WL 2077278, at *2. Mr. Hinckley's decision not to make a related conduct argument under the circumstances appears to be a decision "within the reasonable discretion of counsel in coordinating his overall litigation strategy." *Mejia-Mesa*, 153 F.3d at 931. Accordingly, the Court finds that Singleton has failed to show that Mr. Hinckley's performance was deficient for failing to argue that the sentence on the suspended license offense should not be included in the criminal history calculation.

### d.      Conclusion Re Related Conduct Arguments

In summary, the Court concludes that Singleton has not established that Mr. Hinckley's failure to make the related conduct argument discussed above provides an additional basis to grant his first claim for IAC. Singleton's § 2255 motion therefore is DENIED IN PART on his first claim for IAC insofar as that claim is based on Mr. Hinckley's failure to argue that certain sentences should have been included in the offense level calculation and not the criminal history calculation.

### B.      Second IAC Claim – Concession Re Post-Plea Criminal Conduct

In his second IAC claim, Singleton asserts that Mr. Hinckley was ineffective for conceding that Singleton sought to form a new prostitution ring while in custody after entering his guilty

United States District Court
Northern District of California

plea.  Singleton contends that he did not attempt to form a new prostitution ring, but merely sought to start a legal business focused on pornography and adult entertainment.  He argues that he did not use the word "prostitution" during his jail calls, and that the Government and Probation incorrectly interpreted those calls to be discussions about illegal conduct.  Singleton points out that the Court relied on the Government's characterization of his post-plea conduct when denying his request for a downward variance.  Had Mr. Hinckley challenged that characterization of his conduct, Singleton argues, the Court would not have had a legitimate basis to deny his request for a downward variance.

To satisfy *Strickland's* first prong with respect to this claim, Singleton must show that Mr. Hinckley's failure to challenge the Government's characterization of his post-plea conduct "fell below an objective standard of reasonableness" as measured by "prevailing professional norms." *Strickland*, 466 U.S. at 688.  Mr. Hinckley explains in his declaration that after reviewing the discovery provided on this issue, he "concluded that the government's interpretation of the calls was compelling and it was unlikely that we would be successful at challenging that interpretation at sentencing."  Hinckley Decl. ¶ 12.  In Mr. Hinckley's view, "[t]he fact that Mr. Singleton, on occasion, mentioned in the calls that the business would be legal appeared to be made for the purpose of concealing the true nature of the business from law enforcement eavesdroppers." *Id*. Because Mr. Hinckley saw those efforts at concealment to be "fairly transparent as well as inconsistent," he formed the opinion that trying to convince the Court that Singleton sought to pursue purely legal adult businesses would not be successful. *Id*.

Mr. Hinckley believed that engaging in a lengthy argument regarding the recorded jail calls would result in the Court spending a large amount of time on a subject that would place Singleton in a very poor light. *See* Hinckley Decl. ¶ 13.  At best, the Court might be persuaded that Singleton sought to exploit vulnerable women to work in the fields of pornography, stripping, and escorting, which Mr. Hinckley did not think would help Singleton's case. *See id.*  Moreover, while Mr. Hinckley received assurances from Probation that it did not intend to change its recommendation of 144 months based on the jail calls, and from the Government that it would not seek a sentence outside the Guidelines range of 210-262 months and would not pursue new

19

charges based on the jail calls, he perceived those assurances to be "very tenuous." *Id*. ¶ 14. Mr. Hinckley made a strategic decision that challenging the Government's characterization of the jail calls "would not be successful, would do more harm than good, and would create an unacceptable risk that the government and/or probation would reconsider their respective positions relating to the sentence they would seek (as well as creating a risk of potential new charges)." *Id*. ¶ 15.

Mr. Hinckley's deliberate choices not to attempt what he perceived to be a losing argument, and not to focus the Court's attention on Singleton's attempts to exploit vulnerable women, "appear to be decisions within the reasonable discretion of counsel in coordinating his overall litigation strategy.*" Mejia-Mesa*, 153 F.3d at 931. The Court therefore finds that Singleton has not shown that Mr. Hinckley's failure to challenge the Government's characterization of his jail calls constituted deficient performance.

Although the Court's determination with respect to *Strickland's* first prong is dispositive of Singleton's second IAC claim, on this particular claim the Court finds it appropriate to nonetheless address the test's second prong. To show prejudice under the second prong, Singleton must demonstrate that there is a reasonable probability that the Court would have imposed a different sentence but for Mr. Hinckley's failure to assert that the jail calls related solely to legal conduct. Singleton has not made this showing, nor could he in light of the nature of his post-plea conduct. Like Mr. Hinckley, the Court finds the Government's interpretation of the jail calls to be compelling. The Court finds Singleton's declaration statements that the jail calls related solely to legal conduct to be wholly implausible. *See* Singleton Decl. ¶¶ 7-12. Any argument by Mr. Hinckley that the jail calls related solely to legal conduct would have been considered in light of the transcripts themselves, which would have guided any reasonable judge to conclude that Singleton's declaration of legality was nothing more than an ineffective ruse to contradict planning for prostitution.

Even had Mr. Hinckley persuaded the Court that Singleton's post-plea conduct related solely to legal business enterprises, the Court would not have taken a favorable view of Singleton's efforts to create a business empire by exploiting vulnerable women recruited directly from custody. There is no reasonable probability that the Court would have imposed a shorter

prison term based on any arguments Mr. Hinckley might have presented regarding Singleton's jail calls. Singleton therefore has failed to establish prejudice.

Accordingly, Singleton's § 2255 motion is DENIED as to his IAC claim based on Mr. Hinckley's failure to challenge the Government's characterization of his post-plea conduct as illegal.

## V.   ORDER

(1)   Singleton's § 2255 motion is GRANTED IN PART AND DENIED IN PART as follows:

    (a)   As to the first claim for IAC based on trial counsel's failure to object to the criminal history category of V, the motion is GRANTED insofar as the claim is based on Mr. Hinckley's failure to raise application of U.S.S.G. § 4A1.2(a)(2), and DENIED insofar as the claim is based on Mr. Hinckley's failure to argue that certain sentences should have been included in the offense level calculation and not the criminal history calculation.

    (b)   As to the second claim for IAC based on trial counsel's failure to challenge the characterization of Singleton's post-plea conduct as illegal, the motion is DENIED.

(2)   Singleton's sentence is VACATED;

(3)   Probation is DIRECTED to prepare a revised PSR consistent with this order; and

(4)   Counsel are to MEET AND CONFER regarding a new sentencing date and to contact the undersigned's Courtroom Deputy Clerk for scheduling.

Dated:  February 1, 2023

_____
BETH LABSON FREEMAN
United States District Judge